Following the death of Betty Jean Jeffreys on January 10, 2004, her sister and next of kin, Elsie J. Kelly, was substituted as plaintiff in this action.
 * * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction in this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On January 10, 2004, the date of death of Betty Jean Jeffreys (hereinafter "decedent"), the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an employment relationship existed between the parties.
5. Duke University is self-insured.
6. The following were admitted into evidence at the Deputy Commissioner's hearing:
 a. Stipulated Exhibit Number 1, Pre-Trial Agreement
 b. Stipulated Exhibit Number 2, Medical Records
 c. Stipulated Exhibit Number 3, Industrial Commission Forms
 d. Plaintiff's Exhibit Number 1, Log of Blood Sugar Levels allegedly prepared by decedent, which is admitted for illustrative purposes only.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. On December 28, 2000, former Deputy Commissioner W. Bain Jones, Jr. filed an Opinion and Award concluding that decedent contracted a compensable occupational disease in *Page 3 
which her stressful work environment aggravated and accelerated her pre-existing conditions, including diabetes, anxiety, depression and carpal tunnel syndrome. The diabetes also caused the loss of vision in both eyes. Deputy Commissioner Jones awarded the decedent total disability compensation benefits based on average weekly wage of $709.77 beginning April 1, 1999 and continuing until there was a showing of a change in condition.
2. On February 25, 2004, the Full Commission, in an Opinion and Award filed by Commissioner Laura K. Mavretic, awarded decedent attendant care, transportation, housecleaning services, and other benefits recommended by the authorized treating physician, Dr. Scott V. Joy. According to the stipulations stated in the Opinion and Award, the parties stipulated that the date of the decedent's injury was April 11, 1997.
3. Decedent was continuously disabled as a result of her compensable occupational disease from April 1, 1999 through January 10, 2004, the date of her death. At the time of her death, decedent was unmarried and did not have any children or other dependents, either whole or partially dependent on her for support. Elsie J. Kelly is the sole surviving sibling of decedent and therefore her next of kin. Decedent's nephew, James R. Jeffreys, Jr. is the administrator of decedent's estate.
4. On February 2, 2001, Dr. Scott V. Joy began treating decedent for her multiple conditions, including insulin-dependent diabetes with complications of neuropathy. Decedent also had industrial blindness secondary to her diabetic condition. Decedent documented her glucose levels in logbooks, which were reviewed by Dr. Joy during her scheduled appointments. During the course of his treatment, Dr. Joy noted that decedent's glucose levels improved in 2002, but soared again in 2003. The last time that Dr. Joy examined decedent prior to her death was on October 10, 2003. At decedent's last appointment, Dr. Joy noted that her glucose levels *Page 4 
appeared to be variable and that he was considering a continuous glucose monitor to better manage her insulin.
5. On January 7, 2004, decedent called Dr. Joy's office to report respiratory symptoms, which she had experienced for approximately three weeks. After reviewing her reported symptoms, Dr. Joy diagnosed decedent with an upper respiratory infection and prescribed a course of antibiotics to treat the same.
6. Following decedent's death on January 10, 2004, Dr. Joy completed a certificate of death, which identified the cause of decedent's death as "complications of diabetes." An autopsy was not performed on decedent.
7. Dr. Joy, a certified diabetes educator, testified that the most likely cause of decedent's death was complications attributed to her diabetic condition, specifically a cardiovascular event. Dr. Joy based his opinion on several factors. Dr. Joy testified that research data has established that women with diabetes are four times more likely to have a cardiovascular event than women without diabetes. From 2001 through the date of her death on January 10, 2004, Dr. Joy treated and monitored decedent for her various medical conditions, including her diabetes. During his last examination of decedent on October 10, 2003, Dr. Joy noted that decedent's glucose levels were significantly higher. Based on his clinical expertise, his personal knowledge of decedent's diabetic condition, and medical research, Dr. Joy opined and the Full Commission finds that decedent's death was causally related to her diabetic condition.
8. Defendant contends that Dr. Joy's medical opinion should not be afforded any weight because without an autopsy, Dr. Joy's opinion is based on mere speculation. Dr. Joy testified that death certificates are normally completed without the benefit of an autopsy. In light *Page 5 
of the fact that decedent's death was not precipitated by some traumatic injury such as a fall or motor vehicle accident and based on her well-documented medical history, Dr. Joy opined that the most likely cause of death was a cardiovascular event secondary to complications of the decedent's diabetes. Defendant offered no medical evidence to rebut Dr. Joy's expert opinion or establish that the cause of decedent's death was idiopathic or unrelated to her diabetic condition. The only competent medical evidence presented is the expert opinion of Dr. Joy. The Commission finds that plaintiff presented sufficient competent medical evidence to establish that the cause of decedent's death was due to complications from her compensable diabetic condition.
9. Decedent contracted a compensable occupational disease, which became disabling on April 1, 1999 when decedent went out of work and officially lost wage earning capacity due to her occupational disease. Decedent remained continuously disabled until her death on January 10, 2004. Decedent's death, which was the proximate result of her compensable occupational disease, occurred within six years of the date of her occupational disease. Accordingly, plaintiff is entitled to death benefits pursuant N.C. Gen. Stat. § 97-38.
10. As the result of her compensable occupational disease and prior to her death, decedent sustained industrial blindness of both eyes, for which decedent's estate is entitled to equitable compensation.
11. The hearing of this matter was not unreasonably defended, and therefore, no attorney's fees should be assessed.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 6 
1. Decedent's death on January 10, 2004, was caused by and was the direct result of her compensable occupational disease. N.C. Gen. Stat. § 97-38.
2. Pursuant to N.C. Gen. Stat. § 97-38, "If death results proximately from a compensable injury or occupational disease and within six years thereafter, . . . the employer shall pay or cause to be paid [death benefits]. . . ." Id. Our courts interpreted the statutory language of N.C. Gen. Stat. § 97-38 which read prior to its amendment "if death results proximately from the accident" (emphasis added) to mean that the date of an "accident" in cases involving occupational diseases is the date on which the claimant experiences "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Booker v. Medical Center,297 N.C. 458, 483, 256 S.E.2d 189, 205 (1979). In Joyner v. J. P.Stevens and Co., 71 N.C. App. 625, 322 S.E.2d 636 (1984), disc. rev. denied,313 N.C. 330, 327 S.E.2d 891 (1985), the Court of Appeals stated that the "accident" within the meaning of N.C. Gen. Stat. § 97-38 occurred when the deceased employee's disability due to the occupational disease began, which was the date the deceased employee officially lost wage earning capacity due to his occupational disease. Id. at 626-627,322 S.E.2d at 637.
3. In this case decedent's occupational disease became disabling on April 1, 1999 pursuant to the Opinion and Award filed by former Deputy Commissioner Jones. Therefore, decedent's death on January 10, 2004, which was the proximate result of her compensable occupational disease, occurred within six years of the date her occupational disease became disabling. Plaintiff's claim for death benefits, therefore, is not barred by N.C. Gen. Stat. § 97-38.
4. Decedent left no persons who were either wholly or partially dependent upon decedent for support. N.C. Gen. Stat. § 97-38. Therefore, Elsie J. Kelly, as the decedent's next *Page 7 
of kin, is entitled to recover death benefits in the amount of $473.20 per week for 400 weeks beginning January 10, 2004. N.C. Gen. Stat. §§97-38, 97-40.
5. As a direct and proximate result of decedent's occupational disease, decedent sustained industrial blindness for which her estate has a vested right and is entitled to payment of 240 weeks of compensation. N.C. Gen. Stat. §§ 97-31(16), 97-31(17).
6. Defendant shall pay funeral expenses not to exceed $3,500.00 to the appropriate party who provided or previously paid for such services. N.C. Gen. Stat. § 97-40.
7. The defense of this claim was reasonable and not stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v.Mountain Breeze Restaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved below, defendant shall pay death benefits in the amount of $473.20 per week for 400 weeks commuted to present value and paid in a lump sum to decedent's next of kin, Elsie J. Kelly. N.C. Gen. Stat. §§ 97-38, 97-40.
2. Subject to a reasonable attorney's fee approved below, defendant shall pay decedent's estate compensation for decedent's loss of the vision in both eyes in the amount of $473.20 per week for 240 weeks.
3. A reasonable attorney's fee of 25% of the compensation awarded in paragraphs 1 and 2 of this Award is approved for plaintiff's counsel. *Page 8 
4. Defendant's request for attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 is hereby DENIED.
5. Defendant's motion to dismiss plaintiff's claim as barred by the statute of limitations is DENIED.
5. Defendant shall pay the costs.
This 26 day of March 2007.
S/________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ DANNY LEE MCDONALD COMMISSIONER *Page 1